# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# PIKEVILLE

Case No. 7:23-cv-00089-REW

---

**In re: INMET MINING, LLC, *Debtor***

**BLACKJEWEL LIQUIDATION TRUST, LLC**

*Appellant*,

**v.**

**INMET MINING, LLC, *et al.***

*Appellees*.

Appeal from the United States Bankruptcy Court
For the Eastern District of Kentucky
Pikeville Division
Case No. 7:23-ap-07002

---

## BRIEF OF APPELLEE THE
## LIQUIDATING TRUST OF INMET MINING, LLC

---

James R. Irving
April A. Wimberg
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone:  (502) 587-3606
E-mail:  james.irving@dentons.com
        april.wimberg@dentons.com

*Counsel for Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee Evan Blum (the "<u>Trustee</u>"), not individually, but as trustee of the Liquidating Trust (the "<u>Trust</u>") of INMET Mining, LLC ("<u>Inmet</u>") makes the following disclosures:

1.     The Trust has no parent corporation.

2.     No publicly held corporation owns 10% or more of the Trust's membership interests.

*/s/ James R. Irving*_____
James R. Irving

*Counsel for Evan Blum, not individually,*
*but as Trustee of the Liquidating Trust of*
*INMET Mining, LLC*

i

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ISSUES PRESENTED....................................................................................................4

STATEMENT OF THE CASE ......................................................................................5

   I.    Inmet Acquired Assets from Blackjewel. .............................................................5

       A.    The Base Royalty Agreement Called for Regular Fixed Payments Not Tied to Production. ..................................................................................6

       B.    The Employee Royalty Agreement Terms Tied Payment to Production over Two Years. ...................................................................................7

       C.    Blackjewel Liquidated its Claims under Both Royalty Agreements. ...7

   II.   Inmet Commences its Chapter 11 Bankruptcy Case.............................................8

   III.  Inmet Prevails in an Adversary Proceeding Against Blackjewel Regarding Whether Its Claim "Runs with the Land."...............................................9

   IV.  Inmet, BMMS, and the Committee Reach a Global Settlement Allowing for Asset Sales and a Chapter 11 Plan.......................................................11

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT ...............................................................................................................17

   I.    The Doctrines of Judicial and Equitable Estoppel are not Applicable...........17

       A.    Inmet Took No Position Before the West Virginia Bankruptcy Court Regarding Whether the Royalty Interest Ran with the Land. .................18

       B.    Because Inmet Took No Position, There Can Be No Judicial Acceptance. ...................................................................................22

       C.    Likewise, Inmet Cannot be Equitably Estopped. ................................24

   II.   The Bankruptcy Court's Holding that the Royalty Interest Does Not Run with the Land is Correct, and Must be Affirmed.........................................25

       A.    Blackjewel Places Excessive Emphasis on the Intent Factor, Which is Not in Dispute. ...................................................................................26

       B.    The Royalty Interest Does not Touch and Concern the Land.................27

C.    Privity of Estate Does Not Exist, A Point that Blackjewel has Conceded.........................................................................................29

D.    Even if the Royalty Interest Burdened the Land, It Was Converted to a Chose in Action When Blackjewel Accelerated the Obligations..........31

III.   The Court Should Consider Whether This Appeal is Moot, and Whether Effective Relief may be Granted..............................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997)............................................................34

*In re Badlands Energy, Inc.*,
  608 B.R. 854 (Bankr. D. Colo. 2019)................................33

*Black v. Birner*,
  197 S.W. 3d 873 (Ky. Ct. App. 2005) ...............................25

*Church of Scientology v. United States*,
  506 U.S. 9 (1992)..............................................................35

*City of Covington v. Covington Landing Ltd. P'ship*,
  71 F.3d 1221 (6th Cir. 1995) ............................................36

*Conservation Northwest v. Sherman*,
  715 F.3d 1181 (9th Cir. 2013) ..........................................22

*Cotita v. Verizon Wireless*,
  54 F.Supp.3d 714 (W.D. Ky. 2014)...................................18

*Curreys of Neb., Inc. v. United Producers, Inc. (In re United
  Producers, Inc.)*,
  526 F.3d 942 (6th Cir. 2008) ......................................36, 37

*Fishback v. Dozier*,
  362 S.W. 2d 490 (Ky. Ct. App. 1962) ...............................27

*In re Fontainebleau Las Vegas Holdings, LLC*,
  434 B.R. 716 (S.D. Fla. 2010) ..........................................38

*Gibbons v. Tenneco, Inc.*,
  710 F. Supp. 643 (E.D. Ky. 1988).....................................32

*Great Earth Cos. v. Simons*,
  288 F.3d 878 (6th Cir. 2002) ............................................24

*Guardian Savings and Loan Assoc. v. Arbors of Houston Associates LTd. P'Ship (In re Arbors of Houston Associates Ltd. P'ship)*,
172 F.3d 47 (6th Cir. 1999) ...................................................................35

*Haggart v. Woodley*,
809 F.3d 1336 (Fed. Cir. 2016) ...........................................................21

*Hanrahan v. Mohr*,
905 F.3d 947 (6th Cir. 2018) ...............................................................35

*Hood v. Tenn. Student Assistance Corp. ( In re Hood)*,
319 F.3d 755 (6th Cir. 2003) ...............................................................30

*In re Hovis*,
356 F.3d 820 (7th Cir. 2004) ...............................................................22

*KL & JL Invs., Inc. v. Lynch*,
472 S.W. 3d 540 (Ky. Ct. App. 2015) ............................................26, 27

*Konstantinidis v. Chen*,
626 F.2d 933 (D.C. Cir. 1980).............................................................24

*In re Kramer*,
71 F.4th 428 (6th Cir. 2023) ...........................................................35, 38

*Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe*,
546 F.3d 752 (6th Cir. 2008) .................................................................4

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...........................................................................19

*New Products Corp. v. Tibble (In re Modern Plastics Corp.)*,
577 B.R. 270 (W.D. Mich. 2017) ....................................................18, 24

*Ochadleus v. City of Detroit, Michigan (In re City of Detroit, Michigan)*,
838 F.3d 792 (6th Cir. 2016) ...............................................................36

*Oliver v. Schultz*,
885 S.W. 2d 699 (Ky. 1994)................................................................31

*Palazzo v. Harvey*,
380 F.Supp.3d 723 (M.D. Tenn. 2019).................................................33

v

*Reynolds v. C.I.R.*,
    861 F.2d 469 (6th Cir. 1988) .........................................................................18, 20

*U.S. ex rel. Roby v. Boeing Co.*,
    302 F.3d 637 (6th Cir. 2002) .....................................................................35

*Shively Ctr., LLC v. Texas Roadhouse of Dixie Highway, LLC*,
    2012 WL 752037 (Ky. Ct. App. Mar. 9, 2012) ......................................33

*Smith v. Pierce (In re Smith)*,
    526 B.R. 343 (D. Ariz. 2015) .....................................................................21

*Stephens Industr. v. McClung*,
    789 F.2d 386 (6th Cir. 1986) .....................................................................24

*Tangwall v. Looby*,
    109 Fed. Appx. 12 (6th Cir. 2004)......................................................18, 20, 21

*Teledyne Indus., Inc. v. N.L.R.B.*,
    911 F.2d 1214 (6th Cir. 1990) ..............................................................18, 23, 24

*United Steelworkers of Am. v. Ormet Corp. (In re Ormet Corp.)*,
    355 B.R. 37 (S.D. Ohio 2006) .....................................................................36

*Whitehead v. Brummett*,
    Case No. 2020-CA-0866-MR, 2021 WL 1327846 (Ky. Ct. App.
    Apr. 9, 2021) ...............................................................................................26

**Statutes**

11 U.S.C. § 363 .........................................................................................................24

11 U.S.C. § 1101 ...............................................................................................36, 37

11 U.S.C. § 1127 ...................................................................................................37

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ...............................................................27

21 C.J.S. Covenants § 32 ......................................................................................27

13B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris.
    § 3533.1 (3d ed. 2023) ...............................................................................35

vi

# INTRODUCTION

Bankruptcy, almost by definition, often results in parties who are not satisfied to receive less remuneration than they believe they are entitled to. An insolvent company lacks assets and revenues sufficient to pay back its debts as they become due in the ordinary course. Inmet sought bankruptcy protection because it was such a company. When Inmet commenced its chapter 11 case, it had fewer than 400 employees, an active coal mining operation in Kentucky, and an idled coal mining operation in Virginia. (A-134; ASupp-402). On the other side of the ledger, Inmet owed over $100 million in secured debt to its primary secured lender, Black Mountain Marketing and Sales L.P. ("BMMS") (A-136; ASupp-403).[1] Further, Inmet had accrued millions in unpaid unsecured debt, including over $20 million in unsecured debt to the Blackjewel Liquidation Trust, LLC ("Blackjewel"), Inmet's largest unsecured creditor. (A-156). Other than Blackjewel, Inmet's unsecured creditors primarily included various trade creditors with whom Inmet had done business.

Through contentious sale processes and negotiations among Inmet, BMMS, and the Official Committee of Unsecured Creditors of Inmet Mining, LLC (the

---

[1]    Notably, the Committee (as defined herein) in Inmet's bankruptcy case conducted an investigation into potential bases to challenge BMMS's secured claims against Inmet, and determined that such a challenge would likely be fruitless and ultimately value destructive. (ASupp-152–53).

1

"<u>Committee</u>"), Inmet and the Committee were able to secure approximately $5.5 million in cash proceeds for the benefit of unsecured creditors, free and clear of any of BMMS's liens. (ASupp-151).  Although far less than the amount of unsecured debt held by Inmet or owed to Blackjewel, Inmet and the Committee determined that, realistically, this represented significant value for creditors in light of Inmet's worsening financial condition. *Id*.  The Bankruptcy Court agreed, determining that the sales and settlement "provide[d] real value" to unsecured creditors. (A-879).

Dissatisfied with what is a typical result in bankruptcy Blackjewel now, in effect, seeks preferential treatment over and above that received by other unsecured creditors, including by seeking a "redistribution of the sale proceeds," from the Trust.  *See* Case No. 7-23-cv-00059-REW, Docket No. 28, p. 20.  However, as already determined by the Bankruptcy Court, Blackjewel holds no special status that elevates it to any preferential treatment.  Blackjewel is an ordinary unsecured creditor of a bankrupt coal company, albeit one with a large claim.  This does not entitle Blackjewel to receive greater than a *pro rata* distribution of remaining available funds along with other similarly situated unsecured creditors.

Against a complex and far-reaching backdrop, the actual merits of this appeal are narrow.  The issue of whether Inmet's financial obligations to Blackjewel are a covenant that "runs with the land" is a straightforward commercial dispute.  The Bankruptcy Court resolved this dispute by correctly determining that Inmet's

2

obligations do not run with the land and do not bind any of Inmet's successors because Blackjewel failed to craft a covenant that met applicable legal requirements. Blackjewel began with a routine unsecured financing agreement and affixed to it "royalty" label and a recitation that it "ran with the land." Under applicable law, this is insufficient to create covenant to bind successors and assigns. Blackjewel also attempts to elevate this issue to something greater than an ordinary commercial dispute by invoking principles of estoppel, but this is a red herring and is utilized by Blackjewel in an effort to avoid this Court taking up this appeal on the actual merits.

Finally, the Trust's presence in this appeal as a party in interest in lieu of Inmet is a surefire sign of how far this case has progressed beyond the narrow issues. The Trust filed its motion for substitution as party in interest due to confirmation of a chapter 11 plan by the Bankruptcy Court. *See* Docket No. 9. By the terms of this plan and the Bankruptcy Court's order approving it, the Trust has been vested with all of Inmet's assets, including cash, causes of action, books and record, privileges, and all other property. (ASupp-411–12; ASupp 657–58). The Trust is obligated to distribute this property, including the proceeds of Inmet's sales and settlement, to Inmet's remaining creditors (including Blackjewel). (ASupp-398). Inmet, as a corporate entity, is set to be liquidated and dissolved. (ASupp-415). In light of the confirmation of this plan by a final order of the Bankruptcy Court, the Trust believes that there are additional grounds upon which this Court must consider whether it can

grant effectual relief to Blackjewel, or alternatively whether this appeal is rendered moot.

## **ISSUES PRESENTED**

1.     Whether, simply by virtue of entering into a series of agreements with Blackjewel that were then authorized by the West Virginia Bankruptcy Court, Inmet is now estopped from arguing that its payment obligations under one such agreement are not a covenant that "runs with the land" as a matter of law?

The Trust agrees with Blackjewel that this Court reviews the Bankruptcy Court's estoppel analysis *de novo*. *See Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008).

2.     Whether the Bankruptcy Court correctly determined that such payment obligation does *not* meet the legal requirements of a covenant that runs with the land?

The Trust agrees with Blackjewel that this Court reviews the Bankruptcy Court's determination that the payment obligation does not "run with the land" as a matter of law *de novo*.

3.     Whether this appeal has been rendered moot by subsequent actions of the Bankruptcy Court that have not been challenged or appealed, primarily confirmation of a chapter 11 plan?

4

## STATEMENT OF THE CASE

Due to the significant overlap of the factual background and issues presented in the related appeal pending before the Court, the Trust refers the Court's attention to and incorporates by reference the joint briefs, motion to dismiss, and related briefing submitted by the Debtor in the related appeal. *See* Case No. 7:23-cv-00059-REW (the "Sale Order Appeal"); *see also* Order date January 12, 2024, Docket No. 14 (permitting parties to incorporate by reference or cite to briefing in the Sale Order Appeal). The following statement of the case draws in part upon the *Joint Brief of Appellees, INMET Mining, LLC and Black Mountain Marketing and Sales L.P.* [Sale Order Appeal, Docket No. 26].

## I.    Inmet Acquired Assets from Blackjewel.

The events leading to this appeal began with the commencement of another bankruptcy proceeding. Beginning on July 1, 2019, Blackjewel, L.L.C., *et al.,* filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by which it commenced the proceedings jointly-administered as *In re: Blackjewel, LLC,* Case No. 19-30289, before the United States Bankruptcy Court for the Southern District of West Virginia (the "Blackjewel Bankruptcy Proceeding").

Inmet organized in 2019 to bid on and purchase coal-related assets auctioned in the Blackjewel Bankruptcy Proceeding. Inmet and the Blackjewel debtors

ultimately documented that purchase in three agreements executed on September 7, 2019 (collectively, the "Sale Agreements"):

- An Assignment and Assumption Agreement and Bill of Sale Regarding Specific Assets which set forth the assets to be conveyed and liabilities to be assumed by the respective parties (A-1612);

- A Royalty Agreement between Inmet and Blackjewel (A-1047, the "Base Royalty Agreement"); and

- A second Royalty Agreement, the proceeds from which were to be used solely for the payment of unpaid wages of Blackjewel employees (A-1122, the "Employee Royalty Agreement" as defined in Blackjewel's brief and together with the Base Royalty Agreement, the "Royalty Agreements").

Inmet paid the Blackjewel debtors cash consideration for the sale in the amount of $6,350,000 in addition to the above-referenced Royalty Agreements and assumed certain significant obligations of Blackjewel, particularly under the associated mining permits. (A-1614 ¶4).

On September 17, 2019, the West Virginia Bankruptcy Court entered an order approving the Inmet sale and the Sale Agreements (the "Blackjewel Sale Order"). (A-1572).

### A.    The Base Royalty Agreement Called for Regular Fixed Payments Not Tied to Production.

The Base Royalty Agreement sets forth a schedule of fixed payments, requiring Inmet to pay Blackjewel "in annual fixed amounts of $2,738,092" for six years commencing in September 2020. (A-1049, ¶2).  In the aggregate, the annual

payments totaled nearly $16.5 million, with an assumed net present value of $9.1 million. (A-1048).

The Base Royalty Agreement states that the amounts paid constitute "royalty" payments. (A-1048–49).  However, it also states that the required payments are not dependent on the operation of mines or production of coal from the subject lands: "for the avoidance of doubt, the Annual Payment shall be due and payable *regardless of whether the Purchased Mines are operating* or producing saleable coal." (A-1049, ¶2 (emphasis added)).

### B. The Employee Royalty Agreement Terms Tied Payment to Production over Two Years.

The Employee Royalty Agreement provides for a "royalty payment [that] shall be equal to $0.25 per ton of coal mined from the Purchased Mines up to an aggregate total of $550,000." (A-1123–24, ¶1).  The payments were to begin on the date Inmet commenced mining operations and continue for 24 months, unless the entire amount was paid before the expiration of the 24 months. (A-1123-24).

### C. Blackjewel Liquidated its Claims under Both Royalty Agreements.

On December 8, 2021, long before Inmet commenced its bankruptcy case, Blackjewel provided notice to Inmet of Inmet's breach of the Base Royalty Agreement and Blackjewel's election to accelerate *all* outstanding payments under the Base Royalty Agreement. (A-1109, ¶33).  Blackjewel claims that because of the acceleration, the entire amount is due and owing immediately, not in the future:

"INMET is currently obligated to pay $17,138,298.52 under the Base Royalty Agreement." (A-1110, ¶34; A-1114, ¶63 (alleging that Inmet is liable for and legally obligated to pay Blackjewel's damages, including "$17,138,298.52 under the Base Royalty Agreement")).

Blackjewel also accelerated the entire $550,000 amount due and owing under the Employee Royalty Agreement. (A-1108–09, ¶25.)

Moreover, on August 30, 2022, Blackjewel filed an adversary proceeding against Inmet in the Blackjewel Bankruptcy Proceedings seeking declaratory relief, specific performance, and monetary damages for breach of the Royalty Agreements. *See Blackjewel Liquidation Trust v. Kopper Glo Mining, LLC (In re Blackjewel LLC)*, Adv. No. 22-3001, 2022 WL 17184810, at *1 (Bankr. S.D. W.Va., Nov. 23, 2022).

As the Bankruptcy Court concluded in its "runs with the land" decision, the acceleration of the payment obligations due under the Base Royalty Agreement and the commencement of the suit to enforce those obligations had the effect of converting whatever real property interests the Royalty Interest created (if any) into personal property—a chose in action—that could be satisfied by a money judgment.

## II. Inmet Commences its Chapter 11 Bankruptcy Case.

On March 26, BMMS exercised its rights to remove Inmet's CEO and appointed Jeffrey Strobel, a former investment banker with decades of experience in

8

coal transactions, as its Chief Restructuring Officer ("CRO"). (A-404, ¶¶8–9).  Mr. Strobel acted as Inmet's CRO throughout the pendency of Inmet's bankruptcy case through the date of sale.

On April 5, 2023 (the "Petition Date"), Inmet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing its bankruptcy case.  As of that date, Inmet owned two coal operations acquired from Blackjewel: (1) an active coal mining operation located predominantly in Kentucky (the "Kentucky Assets") and (2) an idled coal mining and processing operation primarily located in Virginia ("Pigeon Creek").  (A-134, ¶6).  Inmet conducted operations mainly on leased real property. Its primary lease with ACIN LLC ("ACIN Lease") covered real property in both operations. (A-762 ¶11; A-767 ¶42.)

Inmet operated under various federal and state mining permits. (A-761, ¶6). Indemnity National Insurance Company and its affiliates ("INIC") issued bonds securing Inmet's permit-related obligations. (A-773).

BMMS was Inmet's principal prepetition secured creditor.  On the Petition Date, Inmet owed BMMS over $100,000,000. (A-136, ¶11).

## III.    Inmet Prevails in an Adversary Proceeding Against Blackjewel Regarding Whether Its Claim "Runs with the Land."

The crux of this appeal is Blackjewel's statement that Inmet's payment obligations to it under the Base Royalty Agreement "run with the land" and therefore bind subsequent purchasers. (A-1094, ¶¶5-6; Br. of Appellant 28-40).

9

On May 1, 2023, Inmet filed an adversary complaint against Blackjewel requesting a declaration that Blackjewel's alleged claim did not run with the land and bind purchasers (the "Inmet Adversary Proceeding"). (A-1037). In its answer to the complaint, Blackjewel admitted that:

- It accelerated the outstanding payments due under the Base Royalty Agreement (A-1109, ¶33) and the Employee Royalty Agreement (A-1108, ¶25).

- As a result of the acceleration, the entire amount under the Base Royalty Agreement is due and owing immediately, not in the future: "INMET is *currently* obligated to pay $17,138,298.52 under the Base Royalty Agreement, which encompasses $6,185,930.52 due to Lime Rock and $10,952,368 due to Blackjewel, plus accrued interest as to both components." (A-1109, ¶34 (emphasis added); A-1114, ¶63 (alleging that Inmet is liable for and legally obligated to pay Blackjewel's damages, including "$17,138,298.52 under the Base Royalty Agreement")).

- The entire amount was also due under the Employee Royalty Agreement. (A-1109, ¶26).

- Inmet breached the Base Royalty Agreement (A-1113–15, Count I) and the Employee Royalty Agreement (A-1109, ¶26).

On July 7, 2023, the Bankruptcy Court granted Inmet summary judgment declaring that the obligations under the Base Royalty Agreement are not enforceable as a covenant that runs with the land and do not bind subsequent purchasers ("Declaratory Judgment"). (A-1162). Even though the Declaratory Judgment fully resolved the "runs with the land" issue, Blackjewel neither appealed nor sought leave to appeal the Declaratory Judgment, until October 31.

10

**IV.    Inmet, BMMS, and the Committee Reach a Global Settlement Allowing for Asset Sales and a Chapter 11 Plan.**

As Inmet's litigation with Blackjewel proceeded, negotiations between Inmet, BMMS, and the Committee continued towards a full resolution of Inmet's bankruptcy case.  As a result, the parties noticed four related matters for hearing on July 12:

1.    A joint motion to approve a settlement (the "Settlement Agreement") between the Committee, BMMS, and Inmet (ASupp-141);

2.    Final approval of Inmet's postpetition financing (A-13);

3.    The sale of the Pigeon Creek assets (ASupp-69); and

4.    The sale of the Kentucky Assets (ASupp-1).

(ASupp-168).    All four motions were fully interrelated, with the Settlement Agreement—the lynchpin for a consensual resolution of the case—also contingent on approval and consummation of each of the other matters. (A-854 (Inmet's counsel stating settlement "allow[ed] everything else in the case to go forward.")). The converse was also true—each of the other matters was contingent upon the approval and consummation of the Settlement Agreement.  Although the Committee noticed the settlement motion for the hearing, final negotiations with Committee on the Settlement Agreement extended past midnight and concluded in the hallway just before the hearing. (*Id.*)

Under the Settlement Agreement, BMMS agreed, subject to closing of both sales, to:

11

- make provisional payments for coal to fund the estate's administrative expenses up to the budgeted amount,

- make an immediate nonrefundable deposit of $500,000 to the estate from its cash collateral,

- transfer to the estate its interest the Pigeon Creek sale proceeds,

- assume and pay $1,400,000 in unsecured trade creditors' claims,

- purchase and waive avoidance actions against general unsecured creditors, and

- assume all permit liability for the Kentucky Assets. (A-855–62; ASupp-147–49; 158–66).

In arguing in support of the settlement, the Committee highlighted that the settlement allowed the estate to receive $5,500,000 of the proceeds of the Kentucky and Pigeon Creek sales free and clear of BMMS's liens. (A-873–77). The Committee also noted that the parties would release claims against each other, including BMMS releasing claims and liens as prepetition and postpetition lender and claims under other contracts with Inmet that would otherwise doom any prospect of recovery for unsecured creditors. *Id*. Importantly, the Committee also emphasized how the settlement relieved the estate of other "massive" liabilities:

> A significant achievement in the settlement is there are no permits that will be left behind in this bankruptcy case.
>
> The settlement ensures that BMMS will assume all permit liability and take all permits that are not otherwise taken by Coking Coal in its asset purchase agreement. This relieves the bankruptcy estate of potential massive liabilities, including reclamation claims, and it has the additional benefit of removing such claims from any

potential distribution waterfall.

(A-875).

Thus, the Committee considered the settlement as its best chance to obtain a "meaningful recovery" for unsecured creditors in Inmet's bankruptcy case. (A-873).

Blackjewel did not object to the motion to approve the settlement or the final financing order. In fact, it did not object to the Kentucky Assets sale, other than with respect to BMMS's credit bid rights and the treatment of Blackjewel's Royalty Agreements. And despite its alleged royalty purportedly encumbering the Pigeon Creek assets as well, Blackjewel did not object to the Pigeon Creek sale or the free and clear provisions of the Pigeon Creek sale order.

Based on the record, the Bankruptcy Court approved the uncontested settlement, concluding it was fair and equitable and provided "real value" to the estate—money and releases of claims. (A-879-80).

After approving the settlement, the Bankruptcy Court granted the remaining motions, entering orders in each case containing terms from the Settlement Agreement. (ASupp-177, ASupp-274, ASupp-310; A-978).

Based on the Bankruptcy Court's approval of the Settlement Agreement and the sale of the Kentucky and Pigeon Creek Assets, Inmet and the Committee thereafter sought approval of a chapter 11 plan that would distribute the proceeds realized to the constituents of the bankruptcy case – Inmet's creditors (including

Blackjewel).  As such, on October 5, 2023, Inmet and the Committee filed: (1) a joint chapter 11 plan (the "Plan") (ASupp-327); (2) a joint disclosure statement (ASupp-386) and (3) a motion seeking approval of the disclosure statement and to establish procedures for approval of the Plan (ASupp-527).  The primary purpose of the Plan was to distribute Inmet's remaining assets to its creditors.  (ASupp-398).  The vehicle to accomplish this, after confirmation of the Plan, was the establishment of the Trust and transfer of all of Inmet's assets, including cash, causes of action, books and records, privileges, and other property, to the Trust.  (ASupp-411–12).

On December 13, 2023, the Bankruptcy Court entered an order confirming the Plan. (ASupp-646).  Blackjewel did not object to confirmation of the Plan, nor did it seek to stay confirmation or implementation of the Plan.  Thus, on December 20, 2023 the Plan became effective, meaning that the all of Inmet's assets were transferred to and vested in the Trust. (ASupp-685, ASupp-338).  Further, the Plan provides for substitution of the Trust in lieu of Inmet as a party in interest to these pending appeals and the dissolution of Inmet as a corporate entity. (ASupp-338, ASupp-341).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court did not commit legal error when it determined that the Royalty Interest in the Base Royalty Agreement is not enforceable as a covenant that runs with the land under Kentucky or Virginia law.  The Bankruptcy Court's opinion

14

correctly interpreted applicable law, and properly applied such law to the undisputed facts of this case. Therefore, the opinion of the Bankruptcy Court must be affirmed.

First, the Bankruptcy Court correctly held that doctrines of estoppel do not apply because the West Virginia Bankruptcy Court was never asked to consider whether the Royalty Interest ran with the land. Blackjewel would surely prefer to avoid this Court taking up the actual merits of this case, but its invocation of judicial and equitable estoppel falls far short. Blackjewel does not, and cannot, point to any facts that credibly support the contention that Inmet previously made statements or took positions regarding whether the Royalty Interest burdened the land as a matter of law. Inmet merely entered into a contract with Blackjewel. Because Inmet took no position, Blackjewel likewise fails to point to any facts indicating that the West Virginia Bankruptcy Court accepted any supposed position that the Royalty Interest ran with the land. The West Virginia Bankruptcy Court only authorized Blackjewel to enter into the Sale Agreement with Inmet. The West Virginia Bankruptcy Court's authorization did not constitute a determination of issues as a matter of law, nor represent an acceptance or affirmation of any position.

Second, the Bankruptcy Court correctly held on the narrow legal question of this appeal that the Royalty Interest of the Base Royalty Agreement is not enforceable as a covenant that runs with the land. Core to the Bankruptcy Court's decision is the fact that the Royalty Interest is not a typical royalty at all, but is

instead a term in a standard financing agreement requiring payment of consideration over time.  The Royalty Interest could be prepaid at any time, and payment of the Royalty Interest was unrelated to any actual mining activities of Inmet. As such, the Royalty Interest does not touch and concern any land.  Further, Blackjewel has already conceded that there cannot be privity of estate for the Royalty Interest. Finally, even if Blackjewel had successfully created a covenant that ran with the land, Blackjewel chose to pursue the Royalty Interest in a collection action and accelerated the Royalty Interest in full.  Thus, any interest that burdened the land was voluntarily converted to a "chose in action" that can no longer burden the land.

Lastly, the Trust believes that the Court should consider whether this appeal is moot and whether the Court can grant any effectual relief without unwinding final orders of the Bankruptcy Court to which Blackjewel did not object, did not seek to stay, and did not appeal.  Namely, since this appeal was taken up by Blackjewel the Bankruptcy Court has entered an order confirming Inmet's Plan and vesting all of Inmet's assets and interests in the Trust.  Further, the Trust is obligated to begin making distributions of proceeds to creditors (notably including Blackjewel) pursuant to the confirmed Plan.  The Trust does not believe that the Court can grant any relief in this appeal that does not undermine the Plan and the series of intricate transactions that underlie it.  Therefore, this appeal has been rendered moot.

## **ARGUMENT**

## I.    **The Doctrines of Judicial and Equitable Estoppel are not Applicable.**

Blackjewel first argues that the doctrines of judicial and equitable estoppel prevent even a consideration of whether the "Royalty Interest" in the Base Royalty Agreement runs with the land.[2]  Despite Blackjewel's transparent preference against this Court ever taking up this appeal on its actual merits, Blackjewel has failed to demonstrate that the necessary elements of estoppel are met.  Blackjewel's estoppel argument is remarkable in how much it makes of so little.  Blackjewel greatly overexaggerates what occurred in Blackjewel's own bankruptcy case in connection with its sale of mining assets to Inmet.  This is an attempt to elevate a simple contractual dispute into something greater, which the Court should not countenance.

Despite its representations that Inmet previously took active positions that conflict with positions taken by Inmet in the underlying proceedings, Blackjewel is unable to point to *any* statement of Inmet's prior position other than the existence Base Royalty Agreement.  Likewise, Blackjewel argues that the West Virginia Bankruptcy Court readily accepted Inmet's positions, but points to no evidence for such acceptance other than the West Virginia Bankruptcy Court's approval of the

---

[2]    Throughout its brief, Blackjewel discusses the "Royalty Agreements," including the Base Royalty Agreement and Employee Royalty Agreement, together.  *See, e.g.*, Br. of Appellant 20, 28.  However, the Bankruptcy Court's opinion below concerned only the Base Royalty Agreement. (A-1284).

Sale Agreements through the Blackjewel Sale Order.  These facts are simply too slender a reed to hang application of estoppel – judicial, equitable, or otherwise – and prevent this Court's consideration of the actual merits of this appeal.  *See Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990) ("Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court . . . .").

### A.    Inmet Took No Position Before the West Virginia Bankruptcy Court Regarding Whether the Royalty Interest Ran with the Land.

According to the United States Court of Appeals for the Sixth Circuit, application of judicial estoppel requires showing that (1) a party took a contrary position in an earlier proceeding and (2) another court accepted the earlier position. *Id*.; *see also*, *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988); *Tangwall v. Looby*, 109 Fed. Appx. 12, 14 (6th Cir. 2004).  More precisely, many courts within the Sixth Circuit specifically state that judicial estoppel requires that the adverse party took an inconsistent position *under oath*.  *See*, *e.g.*, *Teledyne Indus., Inc.*, 911 F.2d at 1218 ("[A] party must show that the opponent took a contrary position under oath in a prior proceeding . . . ." (citing *Reynolds*, 861 F.2d at 472–73)); *Tangwall*, 109 Fed. Appx. At 14 (same); *New Products Corp. v. Tibble (In re Modern Plastics Corp.)*, 577 B.R. 270, 282 (W.D. Mich. 2017) (determining that judicial estoppel did not apply to statement not made under oath); *Cotita v. Verizon Wireless*, 54 F.Supp.3d 714, 718 (W.D. Ky. 2014) ("Judicial estoppel bars a party from asserting

a position contrary to one the party has asserted under oath in a prior proceeding. . . ." (citing *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)).  The Supreme Court further instructs courts to consider whether a party advancing an inconsistent position "would derive an unfair advantage" if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

Blackjewel's argument is crafted to create the appearance that Inmet previously stood before the West Virginia Bankruptcy Court and actively took the position that the Royalty Interest would run with the land, as a matter of law.  *See*, *e.g.*, Br. of Appellant 20 (stating that court approved of sale based on "representation" made by Inmet); *Id.* at 22 (stating that Inmet "assumed a certain position," and "assured the Court . . . ."); *Id.* at 27 (stating that Inmet "convinced" the West Virginia Bankruptcy Court "to accept one interpretation" of the Base Royalty Agreement).  In fact, the only supposed "position" taken by Inmet before the West Virginia Bankruptcy Court was merely Inmet's entry into the Sale Agreements with Blackjewel.  Based on the Trust's review of the record, Blackjewel is unable to point to any previous statement made by Inmet (much less any statement made under oath) that supports the argument that, in the underlying adversary proceeding, Inmet took a position that is "clearly inconsistent."  This why the bankruptcy court below correctly found that judicial estoppel is not applicable, as "the West Virgina Bankruptcy Court was never asked to consider whether the

Royalty Interest runs with the land." (A-1297).

Review of the case law relied on by Blackjewel clarifies the distinction. Blackjewel primarily relies on *Reynolds v. C.I.R.*, 861 F.2d 469 (6th Cir. 1988) to argue that judicial estoppel should apply here. In *Reynolds*, the Sixth Circuit reversed a judgement of the United States Tax Court in favor of the I.R.S. because the Commissioner of Internal Revenue had advanced conflicting positions regarding which debtor in two related bankruptcy cases was liable for unpaid income tax. *Id*. There, not only did the Commissioner not dispute that he had taken inconsistent positions, the Court found that Commissioner had "unequivocally asserted" its position through notices of deficiency sent to the taxpayers and stipulations submitted to the bankruptcy court, and had "adhered" to its "position throughout . . . protracted bankruptcy proceedings." *Id*. at 473–74. Inmet's supposed statements, through its mere entry into Sale Agreements that were later approved by the West Virginia Bankruptcy Court, pale in comparison.

The other principal case relied on by Blackjewel fairs no better. In *Tangwall v. Looby*, 109 Fed. Appx. 12 (6th Cir. 2004) the estopped party made affirmative statements in open court regarding the dissolution of a trust, to which he claimed to be a beneficiary. *Id*. at 15. Key to the Sixth Circuit's determination that judicial estoppel applied was citation to the transcript of proceedings before the bankruptcy court, which showed that during a colloquy with the bankruptcy court the party

affirmatively agreed that the trust could legally be set aside. *Id.* Here, Blackjewel points to no such record of any similar statement by Inmet before the West Virginia Bankruptcy Court. Further, the bankruptcy court below undertook a review of record before the West Virginia Bankruptcy Court and found that Inmet made no similar statement respecting whether the Royalty Agreements run with the land. (A-1297). Indeed, Blackjewel even *confirmed* that the issue was never raised before the West Virginia Bankruptcy Court. *Id.*; (A-1180).

Additional case law beyond the Sixth Circuit serves to confirm that the Bankruptcy Court here correctly found that Inmet never took a position or caused the West Virginia Bankruptcy Court to consider whether the Royalty Interest runs with the land. In *Smith v. Pierce (In re Smith)*, 526 B.R. 343, 347–48 (D. Ariz. 2015) a district court found that judicial estoppel would not prevent a bankruptcy trustee from moving to compel turnover of the proceeds of a sale, to which the trustee had not objected before the sale was approved by the bankruptcy court. The district court found that, because the trustee had not objected, he could not be said to have taken "any position at the time of the sale motion" much less "persuaded the bankruptcy court to accept the Trustee's position . . . ." *Id.* at 348. Likewise, other courts find that silence of a party on a particular issue cannot later bind them to a position never positively taken. *See, e.g.*, *Haggart v. Woodley*, 809 F.3d 1336, 1346 (Fed. Cir. 2016) ("[A]cquiescence or failure to take a position . . . is not congruent

to a disavowal of a previous position and, thus, cannot form the basis for judicial estoppel."); *Conservation Northwest v. Sherman*, 715 F.3d 1181, 1185 n.2 (9th Cir. 2013) (finding judicial estoppel to be inapplicable where a party "did not take an explicit position" regarding an issue); *In re Hovis*, 356 F.3d 820, 823 (7th Cir. 2004) (finding that a chapter 11 debtor was not estopped from objecting to a creditor's claim, even though the claim was listed in a fixed amount in a confirmed plan of reorganization, because the parties "did not debate the accuracy of the Bank's claim at the confirmation hearing" and confirmation of a plan does not imply that a claim is necessarily valid.).

Inmet can, at most, be said to have not taken a position before the West Virginia Bankruptcy Court with respect to whether the Royalty Interest in the Base Royalty Agreement successfully burdened the land. The Sale Agreements themselves cannot be the only basis for imposing judicial estoppel. Such an outcome would compel the absurd result that parties to contracts may not ever come to court to seek interpretation or challenge the provisions or enforceability of their agreements, even on the basis of changed circumstances or newly discovered information. Of course, such relief is commonplace.

## B. Because Inmet Took No Position, There Can Be No Judicial Acceptance.

It should go without saying that, where a party did not take an earlier position, there can also be no adoption or acceptance of an earlier position by another court.

22

Here, because Inmet did not take any position before the West Virgina Bankruptcy Court with respect to the runs with the land issue, the West Virginia Bankruptcy Court cannot be said to have accepted or adopted Inmet's nonexistent position. Here, too, the Bankruptcy Court got it right when it found that "the West Virgina Bankruptcy Court was never asked to consider whether the Royalty Interest runs with the land." (A-1297).

However, even if the Court is inclined to find that Inmet did take inconsistent positions between the Blackjewel Bankruptcy Proceeding and the underlying adversary proceeding, there is no basis to find that the West Virginia Bankruptcy Court's approval of the sale to between Blackjewel and Inmet was an "acceptance" of a position that the Royalty Agreements run with the land. The West Virginia Bankruptcy Court's order approving of the sale contains no findings whatsoever respecting the runs with the land issue. (A-1572–1610). In *Teledyne*, the Sixth Circuit found that judicial estoppel could not apply where a district court's order contained no admissions or findings of fact regarding the disputed position. *Teledyne*, 911 F.2d at 1219. The West Virginia Bankruptcy Court's order makes passing reference to Inmet's payment obligations under the Royalty Agreements, but is silent and makes no determination regarding whether these obligations actually run with the land, as a legal conclusion. (A-1577, ¶H). Moreover, a bankruptcy court's approval of the sale of assets from a bankruptcy estate pursuant to section

23

363 of the Bankruptcy Code does not represent the court's assent to or approval of every term of the sale, nor does it imbue a sale agreement with power beyond that of an ordinary contract. *See* 11 U.S.C. § 363(b) (describing circumstances in which property of the estate may be sold, rather than the effect of a bankruptcy court's order authorizing a sale); *see also Stephens Industr. v. McClung*, 789 F.2d 386, 388–90 (6th Cir. 1986) (describing approval of a sale pursuant to section 363).

### C.     Likewise, Inmet Cannot be Equitably Estopped.

Finally, Blackjewel's argument regarding equitable estoppel is equally unavailing. Equitable estoppel may be invoked "to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding." *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980); *see also Teledyne*, 911 F.2d at 1220 (citing *Konstantinidis*). As with the doctrine of judicial estoppel, equitable estoppel is primarily concerned with factual assertions affirmatively made by parties in a judicial proceeding, such as statements in open court, testimony under oath, or litigation positions taken in pleadings. *Id.*; *see also Great Earth Cos. v. Simons*, 288 F.3d 878, 895 (6th Cir. 2002) (determining that equitable estoppel did not apply where there was no record that party ever took a position in a proceeding); *In re Modern Plastics Corp.*, 577 B.R. at 282 (same). Here, again, Blackjewel attempts to rest it use of equitable estoppel merely on Inmet's entry into the Sale Agreements with Blackjewel. This is an insufficient basis

to determine that Inmet previously set out a position upon which Blackjewel detrimentally relied.  Entry into a contract alone cannot be the basis for application of a doctrine of estoppel.   If it was, then no party to a contract would be permitted to seek judicial relief from an agreement previously made.

## II.    The Bankruptcy Court's Holding that the Royalty Interest Does Not Run with the Land is Correct, and Must be Affirmed.

Beyond issues of estoppel, the actual merits issues of this appeal are simple and straightforward: whether the Royalty Interest in the Base Royalty Agreement is a covenant that may run with the land.  At issue is language in the Base Royalty Agreement, constituting not more than half a sentence, that states that Inmet's payment obligations "shall run with the land and be binding upon the successors and assigns of [Inmet] . . . ."  (A-1683).  Blackjewel asserts that recitation of this language is sufficient to create a payment obligation that runs with the land.  On this, too, the Bankruptcy Court's holding is correct, and should be affirmed.

Under Kentucky law, "the criteria for determining whether a covenant runs with the land or is merely personal" includes the following factors: (1) "the intent of the parties," (2) "whether the covenant . . . affect[s] or concern[s] the land[,]" and (3) "whether privity of estate exists between the party claiming the benefit and the party who rests under the burden."  *Black v. Birner*, 197 S.W. 3d 873, 880 (Ky. Ct. App. 2005) (citing *Oliver v. Schultz*, 885 S.W. 2d 699, 700 (Ky. 1994)).

A. **Blackjewel Places Excessive Emphasis on the Intent Factor, Which is Not in Dispute.**

Blackjewel urges the Court to put untoward weight on the first factor – intent of the parties – and allow it to run roughshod over the other required factors. However, as the Bankruptcy Court noted, intent of the parties at the time the Base Royalty Agreement was made is not a fact in issue and the Bankruptcy Court's opinion presumed intent to be satisfied. (A-1286, 89). Blackjewel argues that the Bankruptcy Court "failed to give due deference" to the intent factor and suggests that intent of the parties for a covenant to run with land should be used to paper over any defects with respect to the other factors. Br. of Appellant 29–31. However, this is not the law, and Blackjewel's own case law demonstrates that intent is only a necessary, and not a sufficient, factor.

Blackjewel relies on *KL & JL Invs., Inc. v. Lynch*, 472 S.W. 3d 540 (Ky. Ct. App. 2015) for the proposition that Kentucky courts have evolved to take a less restrictive view of parties' intent. *Id*. at 545. However, Blackjewel ignores that in the next breath the *KL & JL Invs., Inc.* court states that it "*must*" nonetheless "consider 'whether the covenant must affect or concern the land with which it runs, and whether privity of estate exists between the party claiming the benefit and the party who rests under the burden.'" *Id.* at 546 (quoting *Oliver v. Schultz*, 885 S.W.2d at 700) (emphasis added). This is consistent with the approach taken in later cases. *See, e.g.*, *Whitehead v. Brummett*, Case No. 2020-CA-0866-MR, 2021 WL 1327846

26

at *4 (Ky. Ct. App. Apr. 9, 2021). Given that intent of the parties was not in dispute in the adversary proceeding and was presumed to be satisfied in the Bankruptcy Court's analysis, Blackjewel's urging that the Court should put even more weight on the intent factor is pointless.

### B.    The Royalty Interest Does not Touch and Concern the Land.

The proper focus of this dispute is whether the payment obligations under the Base Royalty Agreement "touch and concern" the subject land. *KL & JL Invs., Inc.*, 472 S.W. 3d at 547. A covenant is said to "touch and concern" land when it "affects the use, value, and enjoyment of the property." *Id*. (citing *Bank of Am., N.A. v. Cannonball LLC*, 12 N.E. 3d 562 (Ill. App. 2 Dist. 2014). "By limiting its use and affecting its market value" a covenant "touches and concerns" land. *Fishback v. Dozier*, 362 S.W. 2d 490, 491 (Ky. Ct. App. 1962). "A covenant that touches and concerns the land can be one that calls for either doing physical things to the land or refraining from doing physical things to the land." 21 C.J.S. Covenants § 32.

Here, the Bankruptcy Court correctly held that Inmet's payment obligations to Blackjewel under the Base Royalty Agreement – the "Royalty Interest" – did not touch and concern the land. As the Bankruptcy Court found, the Royalty Interest is not in the nature of a true "royalty" made as payment of a share of income from mining production. *See* Black's Law Dictionary (11th ed. 2019) (defining "mineral royalty" to mean "[a] right to a share of income from mineral production"). Instead,

the Royalty Interest was a form of additional consideration for the sale of mining assets by Blackjewel. Indeed, the "Base Royalty Agreement" appears to simply be a routine financing agreement providing for the payment of consideration over time according to a fixed payment schedule. (A-1048–49). The Royalty Interest may be prepaid by Inmet at a discounted rate, independent of any mining production. (A-1050). The Royalty Interest is obligated to be paid to Blackjewel regardless of whatever use was made of the land. (A-1049) ("For the avoidance of doubt, the Annual Payment shall be due and payable regardless of whether the Purchased Mines are operating or producing saleable coal."). Further, the Base Royalty Agreement does not allocate the Royalty Interest among the subject properties. In other words, the relevant concern to Blackjewel was *not* the actual use or enjoyment that Inmet made of the land (including any specific property), but instead was that Inmet met its payment obligations on time (irrespective of the use, enjoyment, and value of the land or any specific property).

The Bankruptcy Court correctly identified a distinction between cases where covenants have been said to touch and concern land because they limit the use of such land or tie payment obligations directly to the use (or nonuse) of land and the present Royalty Interests. (A-1290–91). In response, Blackjewel does not argue that the Royalty Interest itself touches and concerns the land by limiting its use, but instead points to several *other* covenants (not in dispute in this appeal) and argues

28

that *those* covenants touch and concern the land. Br. of Appellant 32 ("The Base Royalty Agreement contains various covenants . . .");  *see also* (A-1284) (noting that covenant at issue was Royalty Interest, not any other covenant found in the Base Royalty Agreement).  Blackjewel suggests that the term "Royalty Interest," as used in the Base Royalty Agreement, is inclusive of both Inmet's payment obligations and other various non-payment obligations under the Base Royalty Agreement. *Id.* However, the Base Royalty Agreement is quite clear that "Royalty Interest" is defined strictly to mean Inmet's monetary payment obligations. (A-1682) ("[Inmet] hereby creates, grants and conveys to [Blackjewel] a fixed amount royalty interest associated with the operation of the Purchased Mines, equal to the aggregate net present value amount of $9,100,000 (the "Royalty Interest") . . . .").  The Bankruptcy Court's opinion focused exclusively on Inmet's payment obligation under the Royalty Interest, rather than any other covenants contained in the Base Royalty Agreement.  Thus, Blackjewel's argument that Bankruptcy Court erred with respect to whether the Royalty Interest touches and concerns the land misses the mark.

## C.    Privity of Estate Does Not Exist, A Point that Blackjewel has Conceded.

Further, with respect to whether privity of estate exists between the parties, the Bankruptcy Court correctly held that there is not privity of estate in connection with *all* property subject to the Sale Agreements.  Specifically, there is no basis to determine that there was privity of estate between Blackjewel and lessors of certain

subject properties.   This is a point that Blackjewel's counsel conceded at oral argument before the Bankruptcy Court.   (A-1213–16; 1235–36; A-1311–13). Therefore, the analysis the Bankruptcy Court was required to conduct was simple and straightforward.   Because the Royalty Interest related to both leased and fee-owned properties and was not allocated among the properties, and privity of estate cannot be shown with respect to some portion of those properties, then necessarily privity of estate could not be shown for the Royalty Interest.

Blackjewel attempts to get around this issue by arguing that the leases should actually be considered real property interests, rather than leasehold interests.  Br. of Appellant 35.   However, this argument was not raised by Blackjewel before the Bankruptcy Court and is forfeited. *See  Hood v. Tenn. Student Assistance Corp. ( In re Hood)*, 319 F.3d 755, 760 (6th Cir. 2003).  And, even if not forfeited, Blackjewel puzzlingly points to many leases that, on their face, are clearly *not* coal leases or were rejected by Blackjewel in connection with approval of the Base Royalty Agreement.  (A-682, 696–700 (including leases for office and industrial space, as well leases for the ACIN properties and Penn Virginia properties)); *see also* (A-1099, 1213–15 (admitting that ACIN lease was rejected and Royalty Interest does not touch and concern ACIN properties or Penn Virginia properties)).

Further, with respect to fee owned property conveyed to Inmet, there remains a question of whether Blackjewel timely took the steps necessary to bind Inmet's

successors and assigns.  In *Oliver v. Schultz*, 885 S.W. 2d 699 (Ky. 1994) the Supreme Court of Kentucky held that, even where privity among parties exists, "restrictive covenants will be enforced under Kentucky law only when the restriction is placed in a recorded instrument" such as a "recorded subdivision plat or deed of restrictions, *even where* a successor to a bound party had actual notice of the restriction. *Id*. at 701.  Blackjewel represents that it recorded the Base Royalty Agreement itself (A-1186), but conceded at oral argument before the Bankruptcy Court that the Royalty Interest was not reflected in any deeds between Blackjewel and Inmet (A-1216–17).

### D. Even if the Royalty Interest Burdened the Land, It Was Converted to a Chose in Action When Blackjewel Accelerated the Obligations.

Finally, the Bankruptcy Court correctly held that the Royalty Interest no longer runs with the land *even if* Blackjewel had properly burdened the property because Blackjewel chose to accelerate all outstanding payments under the Base Royalty Agreement and did so *immediately* and *in full*. (A-1109, ¶33–34 ("INMET is currently obligated to pay $17,138,298.52 under the Base Royalty Agreement.")); *see also* (A-1110, ¶34; A-1114, ¶63 (alleging that Inmet is liable for and legally obligated to pay Blackjewel's damages, including "$17,138,298.52 under the Base Royalty Agreement")).  Thus, even if Blackjewel is correct that, in general, covenants continue to run with land after they are breached and pursued as a chose in action, here there would be nothing remaining of the Royalty Interest because it

31

was accelerated *in full* and pursued in a collection action in the West Virginia Bankruptcy Court.

Blackjewel's theory regarding covenants as opposed to choses in action would not be entirely without sense if the Royalty Interest was a true royalty obligation and was not accelerated. In a typical case involving mining royalties, such royalties are considered "accrued" or "unaccrued." *See, e.g.*, 3A Summers Oil and Gas § 32:3 (3d ed.). Royalties are "unaccrued" prior to mining, and are "accrued" and converted choses in action upon mining. *Id*. Typical royalty agreements do not contain "acceleration" clauses, as the only way to "accelerate" a real mineral royalty would be to *mine faster*.

Here, payment of the Royalty Interest was untethered from any mining activity and instead the Royalty Interest was payable upon a fixed payment schedule. (A-1048–49). Blackjewel asserted that Inmet's failure to make payment on the Royalty Interest was a breach of the Base Royalty Agreement and elected to accelerate the full unpaid amount—as it was entitled to do under the agreement. (A-1109; 1050–51). Therefore, even if the Royalty Interest had burdened the land (which it did not), at the point of Blackjewel's acceleration and pursuit of the Royalty Interest in a collection action the *entire* Royalty Interest became a chose in action that no longer ran with the land. *Gibbons v. Tenneco, Inc.*, 710 F. Supp. 643, 648 (E.D. Ky. 1988) ("[U]pon the breach of a covenant, it becomes a 'chose in action'

that does not run with land."); *Shively Ctr., LLC v. Texas Roadhouse of Dixie Highway, LLC*, 2012 WL 752037, at *3 (Ky. Ct. App. Mar. 9, 2012) ("the *right to recover damages* arising from the breach of a covenant running with the land is a 'chose in action.'") (emphasis added) (citing *Button v. Drake*, 302 Ky. 517, 195 S.W.2d 66 (Ct. App. Ky. 1946)); *see also In re Badlands Energy, Inc.*, 608 B.R. 854, 876 (Bankr. D. Colo. 2019) ("In sum, 'while a covenant . . . may run with the land, *damages arising from broken covenants do not*.'" (quoting *Wallace v. Paulus Bros. Packing Co.*, 231 P.2d 417, 419 (Or. 1951)) (emphasis added).

Blackjewel attempts to argue that Court should not reach the "chose in action" issue because it was first raised by Inmet and BMMS below in a reply brief. However, Blackjewel's suit to recover the Royalty Interest was specifically raised by Blackjewel in its opposition to Inmet's motion for summary judgement, as well as Blackjewel's answer and counterclaim filed prior to Inmet's reply. (A-1109; A-1155). *See Palazzo v. Harvey*, 380 F.Supp.3d 723, 730–31 (M.D. Tenn. 2019) (permitting arguments to be raised in reply in response to new evidence and arguments raised by non-movant). Further, Blackjewel fails to address the fact that the Bankruptcy Court reached the "chose in action" issue pursuant to Civil Rule 56(f), and cannot argue that it lacked notice of underlying facts or suffered prejudice as a result.

## III.    The Court Should Consider Whether This Appeal is Moot, and Whether Effective Relief may be Granted.

In the related Sale Order Appeal, Inmet and BMMS have argued that Blackjewel's appeal is both constitutionally and statutorily moot because Blackjewel failed to seek a stay of Inmet's sale in the main bankruptcy proceeding. *See* Case No. 7-23-cv-00059-REW, Docket No. 21 (the "Motion to Dismiss").  Inmet and BMMS's mootness arguments apply with equal force to the present appeal, and the Trust incorporates and restates those arguments herein by reference.

The Supreme Court has remarked that "[i]t is the duty of counsel to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) (emphasis in original) (quoting *Board of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985)).  There have been significant developments in the main bankruptcy proceeding since these appeals were taken up that further bolster the parties' arguments in favor of mootness.  Namely, on December 13, 2023 the Bankruptcy Court entered an order confirming the Plan. (ASupp-646).  The Plan became effective on December 19, 2023. (ASupp-665).  Confirmation of the Plan created the Trust, vested all of Inmet's assets in the Trust, and authorized the Trustee to take steps to dissolve Inmet as a corporate entity. (ASupp-338, ASupp-341); *see also* Docket No. 9 (the Trust's motion for substitution in lieu of Inmet as a party to this appeal).  The confirmation and implementation of Inmet's Plan provides for

34

additional bases to determine that these appeals are moot, because the Court cannot grant Blackjewel any effectual relief. *See U.S. ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641 (6th Cir. 2002) (reviewing court may *sua sponte* consider issues of mootness); *see also* 13B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3533.1 (3d ed. 2023) ("[T]he question of mootness is often raised by the courts even though neither party has raised it . . . .").

"A 'case is [constitutionally] moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018). Thus, an appeal must be dismissed "if it would be impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (internal citation and quotations omitted).

In addition to the arguments raised in the Motion to Dismiss, analogy to the doctrine of equitable mootness further clarifies why the inability to grant effectual relief has rendered these appeals moot. "The equitable mootness doctrine seeks to prevent parties from upsetting a plan of reorganization once it is well underway." *Guardian Savings and Loan Assoc. v. Arbors of Houston Associates LTd. P'Ship (In re Arbors of Houston Associates Ltd. P'ship)*, 172 F.3d 47 (6th Cir. 1999). "[A] plan of reorganization, once implemented, should be disturbed only for compelling

reasons." *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225 (6th Cir. 1995) (citations omitted).   Equitable mootness is less stringent than constitutional mootness, in that it is more focused on protecting "the good faith reliance interests created by implementation of [a] bankruptcy plan" rather than a "court's ability or inability to grant relief[.]" *Ochadleus v. City of Detroit, Michigan (In re City of Detroit, Michigan)*, 838 F.3d 792, 798 (6th Cir. 2016).   "It is a prudential doctrine that protects the need for finality in bankruptcy proceedings and allows third parties to rely on that finality."  *United Steelworkers of Am. v. Ormet Corp. (In re Ormet Corp.)*, 355 B.R. 37, 40–41 (S.D. Ohio 2006).

The Sixth Circuit has endorsed a three-part test for determining whether an appeal involving a bankruptcy plan should be considered equitably moot: "(1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan."  *Curreys of Neb., Inc. v. United Producers, Inc. (In re United Producers, Inc.)*, 526 F.3d 942, 947–48 (6th Cir. 2008) (citing *City of Covington*, 71 F.3d at 1225).

When a stay of the implementation of a plan of reorganization is not obtained, parties "will normally implement the plan and reliance interests will be created." *Id.* at 948.  Further, "substantial consummation" is statutory term in the Bankruptcy Code defined pursuant to section 1101 of the Bankruptcy Code, and relates to the

whether a bankruptcy court may permit a confirmed plan to be modified under section 1127 of the Bankruptcy Code. Section 1101(2) defined "substantial consummation" to mean: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101.

Here, the equitable mootness factors are satisfied. There has been no stay of the implementation of the Plan in the main bankruptcy proceeding. Indeed, the Trust's mere existence and presence as a party in interest to this appeal is a surefire sign that implementation of the Plan is underway. Relatedly, the Plan has been substantially consummated as set out in the Bankruptcy Code. Pursuant to the terms of the Plan, upon the effective date of the Plan all of Inmet's assets, including cash, causes of action, books and records, and privileges, were transferred to and vested in the Trust. (ASupp-338). The Trust has further assumed responsibility for management of the transferred assets. *Id.* Further, confirmation and implementation of the Plan has created "third party reliance" interests in Inmet's other creditors who are due to receive distributions pursuant to the Plan in consideration of their claims against Inmet. *See United Producers, Inc.*, 526 F.3d at 951 (citing *In re Eagle Picher Indus., Inc.*, 172 F.3d 48 (6th Cir. 1998).

37

Blackjewel may respond that the doctrine of equitable mootness does not apply to this appeal or the Sale Order Appeal because neither are appeals of the Bankruptcy Court's confirmation of the Plan, and, indeed, recent Sixth Circuit jurisprudence suggest that a strict interpretation of the doctrine may be favored. *See*, *e.g.*, *Taleb v. Miller, Canfield, Paddock & Stone, P.L.C. (In re Kramer)*, 71 F.4th 428, 445–46 (6th Cir. 2023); *but see Desert Fire Prot. v. Fontainebleau Las Vegas Holdings, LLC (In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 742–43 (S.D. Fla. 2010) (noting that the doctrine is "no stranger" to appeals from other kinds of orders). However, the Trust believes that analogy to the doctrine and recent developments in the underlying bankruptcy proceeding are critical to this Court's consideration of whether it is possible to grant effectual relief in either related appeal. In the briefing on the Motion to Dismiss, Inmet and BMMS asked the Court to consider whether it was capable of granting relief without affecting the validity of the sale of Inmet's assets. *See* Case No. 7-23-cv-00059-REW, Docket Nos. 21, 29. In response, Blackjewel has argued in favor various forms of relief, including "redistribution of the sale proceeds," i.e., the principal assets that have been transferred to and now makeup up the corpus of the Trust. *Id*. at Docket No. 28, p. 20.

Thus, without saying as much, Blackjewel is asking for relief that necessitates unwinding of the Plan and annulment of the Trust, in addition to unraveling the

settlement (and related transactions) between Inmet, BMMS, and the Committee that allowed for the Plan to be funded.  But Blackjewel did not object to and has not sought to stay or appeal implementation of the Plan or the settlement, and cannot do so at this stage.  Regardless of which theory of mootness stands on all fours – be it constitutional, equitable, statutory, or some other – the Trust seriously doubts that the Court can grant effective relief in this appeal that it does not significantly upend the good faith reliance interests of third parties who are not parties this appeal.  As a result, the Trust believes that the Court should determine that this case is moot.

Dated:  February 12, 2024

Respectfully,

*/s/ James R. Irving*
James R. Irving
April A. Wimberg
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
Telephone:  (502) 587-3606
E-mail:   james.irving@dentons.com
                april.wimberg@dentons.com

*Counsel for Evan Blum, not individually,*
*but as Trustee of the Liquidating Trust of*
*INMET Mining, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This is to certify that the foregoing motion complies with the type-volume limit of Federal Rule of Bankruptcy Procedure 8015 because, excluding the parts of the motion exempted by Federal Rule of Bankruptcy Procedure 8015(g), according to the word count function of the word processing system used to prepare the motion, this document contains 10,520 words.  This is to further certify that the foregoing motion complies with the type face requirements of and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015 because this document has been prepared in proportionally spaced type face using Microsoft Word in 14 point Times New Roman font.

*/s/ James R. Irving*
James R. Irving

*Counsel for Evan Blum, not individually, but as Trustee of the Liquidating Trust of INMET Mining, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve notice on all Filing Users associated with the case as indicated in the Notice of Electronic Filing.

*/s/ James R. Irving*
James R. Irving

*Counsel for Evan Blum, not individually, but as Trustee of the Liquidating Trust of INMET Mining, LLC*

1

23524853